Marvin NESS, Plaintiff–Appellant,

v.

Bruce D. GLASSCOCK, individually and in his official capacity as Chief of Police for the City of Fort Collins, Colorado; the City of Fort Collins, Colorado, By and Through its agent, officer and employee, Kelly Ohlson, Mayor of the City of Fort Collins, Defendants–Appellees.

No. 88CA0088.

Colorado Court of Appeals,
Div. II.

June 1, 1989.

Rehearing Denied June 29, 1989.

Certiorari Denied Oct. 30, 1989.

Worstell & Dunning, David L. Worstell, Richard J. Ruffatto, Denver, for plaintiff-appellant.

Anderson, Sommermeyer, Wick & Dow, Thomas R. French, Fort Collins, for defendants-appellees.

Opinion by Judge DUBOFSKY.

Marvin Ness (Ness) appeals from the summary judgment in favor of Bruce Glasscock and the City of Fort Collins (City) on Ness' breach of contract and 42 U.S.C. § 1983 (1982) claims based on events culminating in Ness' resignation from the Fort Collins Police Department. We reverse.

In December 1984, Ness, a police lieutenant, hid a tape recorder in the squad room to record conversations of fellow officers. The recorder was discovered and during the subsequent investigation Ness admitted his actions. Ness met with Glasscock, the police chief, to discuss the incident and

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

conceded that some disciplinary action was appropriate. Glasscock gave Ness a disciplinary order demoting him to police officer. The next day Ness resigned.

Ness brought this action alleging that his contractual and constitutional rights were violated because disciplinary procedures contained in city personnel policies and a police directive were breached. He also alleged that city officials knew of, participated in, and acquiesced in the breach of these procedures.

In an affidavit submitted to the trial court, Ness alleged that Glasscock had threatened him with criminal prosecution if Ness refused to resign, that Glasscock said he would provide Ness with glowing letters of recommendation if Ness resigned, that Glasscock had refused Ness' request for time to discuss the situation with his family and with an attorney, and that Glasscock had generally intimidated him and manipulated him into resigning.

The trial court granted summary judgment for the defendants on all issues.

### I.

Ness contends that the trial court erred in granting defendants summary judgment on his contract claim. He argues that defendants failed to comply with procedures set forth in the City Personnel Policies and in the Police Directive and that defendants' failure to follow these procedures breached his employment contract. We agree that the personnel rules and the police directive may be binding on the defendants. Therefore, we agree that the trial court erred in dismissing this claim.

■ Procedures contained in employee manuals may modify or change otherwise "at will" employment arrangements. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). Furthermore, personnel policies for public employees, adopted pursuant to charter or statute, are binding on the adopting governmental entities and the public employees. *See City & County of Denver v. Rinker,* 148 Colo. 441, 366 P.2d 548 (1961); *Board of County Com-*

*missioners v. Andrews,* 687 P.2d 457 (Colo. App.1984).

■ Here, Ness' written appointment as a policeman was subject to the City personnel policies. Thus, under the rule of *Continental Airlines, Inc. v. Kennan,* a factual question is present as to the applicability of the disciplinary procedures to Ness' contract of employment. Accordingly, it was error for the trial court to have granted summary judgment against Ness on his contract claims.

### II.

Ness next contends that the trial court erred in granting defendants summary judgment on his 42 U.S.C. § 1983 (1982) claim. He argues that he had clearly established rights under existing law. We agree.

Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), there is a qualified immunity for public officials performing discretionary acts. The *Harlow* court found that the public interest in deterrence of unlawful conduct and in compensation of victims is protected by a test that focuses on the objective legal reasonableness of an official's act. If an official could be expected to know that certain conduct would violate clearly established statutory or constitutional rights, he may be liable to a person who suffers injury caused by such conduct. *Harlow, supra.*

We construe the City of Fort Collins personnel manual as creating an employment contract under which an employee may only be fired "for cause." Under the Fort Collins manual a new employee has a six-month probationary period, after which he becomes a permanent employee. The manual indicates that he can be dismissed or suspended for committing certain major offenses. These major offenses are not exclusive but are given as examples to the employee so that he can determine the types of activity which threaten his employment. The manual also lists minor offenses which have lesser sanctions. The manual indicates that employees are subject to the following disciplinary actions (in

order of severity): oral warning, suspension, and dismissal. It also provides for an appeal, review, and reconsideration of major disciplinary actions, including suspension or dismissal.

Since the City's personnel manual describes as permanent all employees who remain beyond six months, lists the reasons for which an employee can be either suspended or fired, and provides procedures for appeals, the clear implication is that a permanent employee can only be suspended or fired "for cause." Proof that a public employee has a continuing right to employment demonstrates that he has a property right in his job. *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App. 1989). The Fourteenth Amendment prohibits the entity from depriving a person of "property" without due process of law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Prior to the incident here, this court in *Salimi v. Farmers Insurance Group,* 684 P.2d 264 (Colo.App.1984) announced that an employee manual can contractually bind an employer. This analysis led to the decision in *Dickey v. Adams County School District No. 50,* 773 P.2d 585 (Colo.App. No. 87CA067, October 13, 1988) *cert. granted.* There this court held it was error for the trial court to dismiss a complaint of a public employee where the employee manual indicated he could only be immediately dismissed from employment for specific acts of misconduct or for just and good cause. This court held that plaintiff's allegations were sufficient to state a cause of action for deprivation of his alleged property interest in his employment without due process of law.

The right of a public employee to be terminated only after strict compliance with applicable termination procedures has been recognized in this state at least since *Shumate v. State Personnel Board,* 34 Colo.App. 393, 528 P.2d 404 (1974). *Shumate* and its progeny have analyzed the enforcement of termination procedures in various ways: (1) as a matter of good public policy; (2) as being mandated by the

due process clause; or (3) as both good public policy and a due process requirement. *See Bratton v. Dice,* 93 Colo. 593, 27 P.2d 1028 (1933).

*Shumate* recognized that due process and public policy considerations are involved when a public employee is terminated without a proper hearing. *Shumate* stated that: "When a state agency promulgates rules governing such matters as discharge of its employees which are more stringent in favor of the employee than due process would require, the agency must strictly comply with those rules." *See also Hopwood v. Boulder County Department of Social Services,* 44 Colo.App. 181, 613 P.2d 346 (1980). A due process analysis was also applied in *Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984) in which the court held that when the state promulgates a regulation that imposes on governmental departments more stringent standards than are constitutionally required, due process of law requires those departments to adhere to those standards in discharging employees. *See also Subryan v. Regents of University of Colorado,* 698 P.2d 1383 (Colo.App.1984) (applying a due process analysis).

Thus, *Shumate* and its progeny, although not applying the contractual analysis of *Continental Airlines, Inc. v. Keenan* and *Dickey v. Adams County,* have long recognized that strong policy considerations and due process mandate that public entities adhere to employment termination procedures. The underlying basis for both lines of decisions, *Dickey* and *Shumate,* is that the public employee termination rules alter the traditional "at will" relationship between employer and employee.

■ Therefore, substantially before this incident, it was settled law in this state that, if a public employer has promulgated termination procedures for its employees, the employer must strictly adhere to those procedures. Thus, we conclude that clearly established law did provide Ness with property rights in his employment and that his allegations that Glasscock violated those rights were sufficient to survive the summary judgment motion.

## III.

In support of the summary judgment in its favor, Fort Collins argues that it is not a proper defendant in the § 1983 action because the decision to terminate Ness did not represent a policy or custom of the City. However, the record persuades us that there are genuine issues of fact to be resolved at trial.

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977) held that a local government may be sued under § 1983 for monetary, declaratory, or injunctive relief "when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts" a constitutional injury upon the plaintiff. Subsequent cases have grappled with the meaning of this holding, particularly in defining "policy" and in identifying under what conditions an official's act is deemed to represent municipal policy.

The U.S. Supreme Court has recognized that policy or custom can arise from practices not authorized by written law or express municipal policy. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Moreover, "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The *Pembaur* court explained that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Recently, the Court held in *City of Canton v. Harris,* — U.S. —, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) that a municipality may be held liable for an underlying, but somewhat removed, policy that causes the constitutional tort. A city can have a written policy which is contradicted by other policies or customs it pursues. *Montoya v. City of Colorado Springs, supra.*

Thus, the City would be liable under § 1983 if city officials were either following or possibly establishing a City policy or custom in terminating Ness. In its summary judgment motion the City failed to establish: (1) what *is* City policy or custom regarding termination of police officers for egregious behavior; (2) who has responsibility for establishing final policy in this area; and (3) what was the role of the city manager and other city officials in Ness' termination. Thus, on this record, we cannot conclude as a matter of law whether or not city officials were following or possibly establishing a City policy or custom in terminating Ness.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion. Given our disposition of the contract and constitutional issues determined by summary judgment, a central question to be determined at trial is whether Ness' resignation was involuntary and constituted a constructive discharge. *See Price v. Boulder Valley School District R–2,* 782 P.2d 821 (Colo.App.1989).

SMITH and RULAND, JJ., concur.