David L. GIVAN, Counterclaim Plaintiff–Appellant and Cross–Appellee,

v.

CITY OF COLORADO SPRINGS, a Home Rule City and a Colorado municipal corporation, Counterclaim Defendant–Appellee and Cross–Appellant.

No. 92CA1428.

Colorado Court of Appeals,
Div. IV.

Nov. 18, 1993.

As Modified on Denial of Rehearing
Jan. 6, 1994.

Petition and Cross–Petition for
Certiorari Granted June 20, 1994.

Cornish and Dell'Olio, Craig M. Cornish, Colorado Springs, for counterclaim plaintiff-appellant and cross-appellee.

James G. Colvin, II, City Atty., Stacy L. Rouse, Sr. Corporate Atty., Colorado Springs, for counterclaim defendant-appellee and cross-appellant.

Opinion by Judge CRISWELL.

Plaintiff, City of Colorado Springs (City), initiated this action under C.R.C.P. 106(a)(4) to have the district court review an order of the City's municipal court declaring that the City had no proper grounds to terminate the employment of defendant, David L. Givan. Defendant asserted a counterclaim under 42 U.S.C. § 1983 (1982), alleging that the City had violated his rights to substantive due process of law; he also sought to assert an additional counterclaim based upon a claimed breach of contract. The trial court upheld the municipal court's decision and dismissed the City's C.R.C.P. 106(a)(4) claim, from which dismissal the City appeals. It also entered a judgment dismissing defendant's due process claim and refused to allow him to assert his breach of contract counterclaim. He appeals from that judgment and order. We affirm the trial court's dismissal of the City's complaint, but reverse its judgment and order dismissing defendant's counterclaims.

Pursuant to its municipal code, the City has adopted a written policy respecting municipal employment, called the "Personnel Policies and Procedures Manual" (manual). It is undisputed that the manual is applicable to defendant's employment with the City.

The manual provides that each newly hired employee subject to its terms must serve a six-month probationary period, and upon satisfactory completion of such probation, he or she becomes a "permanent" employee. While there is no direct statement that a permanent employee can only be terminated for cause, the manual defines "discharge" as "an involuntary separation from employment for cause." In addition, the manual contains a listing of "disciplinary offenses" and "dischargeable offenses" for which an employee may be disciplined or discharged. The City concedes that a permanent employee covered

by it terms, such as plaintiff, may not be discharged or otherwise disciplined without cause.

One of the "dischargeable offenses" listed in the manual is "conviction of a felony." This provision, however, is modified by other provisions of the manual. Under these latter provisions, an employee is required to notify his or her department head of any conviction within five working days. Upon such notification, the department head, the appropriate deputy city manager, and the director of personnel "shall determine the proper action to be taken."

The manual provides that, in determining the appropriate action to be taken:

Factors considered may include the nature and type of the crime, the employee's City position, the employee's prior job performance, the employee's length of service, and the employee's fitness to perform. The City reserves the right to discipline an employee, up to and including discharge, for conviction of any local, state, or federal criminal laws which, *in its sole discretion, renders the employee unfit to perform their (sic) job, brings disrepute upon, and/or compromises the integrity of the City* of Colorado Springs. (emphasis supplied)

The manual grants to a department head the right to discharge an employee by giving to the employee a letter of discharge informing the employee "of the violation or incident causing such action." Should the employee be dissatisfied with the department head's action, an appeal may be taken first to the appropriate deputy city manager and then to the city manager, each of whom must "hear" the appeal and provide a "written response."

If still dissatisfied, the employee may appeal to the municipal court, which has the authority to call witnesses and to receive evidence. However, the manual makes clear that the municipal court's review is not to extend further than to determine "whether the City Manager exceeded his jurisdiction or abused his discretion."

Prior to his discharge, defendant had been employed by the City in several capacities,

most recently as an electronic working foreman. In October 1989, he was convicted of the felony of incest based upon a plea of guilty. The incidents leading to his conviction occurred in 1985 and 1986 and involved his adopted daughter. As a sentence, he was placed on supervised probation for a period of five years and required to continue his participation in an incest perpetrator's group.

Based solely upon this conviction, defendant was discharged from his employment with the City in December 1989. His appeal to the deputy city manager was denied, and he thereupon appealed to the city manager, who held an evidentiary hearing at which three witnesses testified for the City and some 15 witnesses were called by defendant. At the conclusion of this evidentiary hearing, the city manager upheld defendant's discharge.

Defendant appealed to the municipal court in accordance with the manual. Without taking additional evidence, but based solely upon the record made before the city manager, the municipal court initially determined that the city manager had abused his discretion in upholding defendant's discharge because no reasonable person, considering the evidence produced, could have concluded that such discharge would be appropriate. Later, after a remand from the district court for further findings, the municipal court determined that the city manager's decision was "so devoid of competent evidentiary support . . . that the decision to terminate employment can only be explained as an arbitrary and capricious exercise of authority."

The City sought review of the municipal court's decision under C.R.C.P. 106(a)(4) asserting that, because the record made before the city manager contained competent evidence to support his decision, the municipal court abused its discretion in rejecting the city manager's decision.

Defendant asserted two counterclaims under 42 U.S.C. § 1983. In the first, he asserted that the City deprived him of his property in violation of the substantive due process requirements of the Fourteenth Amendment by discharging him for arbitrary and capricious reasons. The second, later withdrawn by defendant, asserted that such discharge violated his rights to equal protection. Later, he sought to amend his counterclaims by asserting a state law claim for willful breach of contract, based upon the City's discharge of him and its failure and refusal to reinstate him in spite of the municipal court's finding that his discharge was arbitrary.

In response to various cross-motions for summary judgment, the district court concluded that the municipal court did not abuse its discretion in acting upon defendant's discharge and, therefore, dismissed the City's claim under C.R.C.P. 106(a)(4). In addition, it concluded that defendant had not presented any evidence of a due process violation and dismissed defendant's § 1983 claim. Finally, concluding that defendant's contract claim was not rationally related to the City's C.R.C.P. 106(a)(4) claim, it refused to allow him to assert such a claim in the instant action.

## I.  The City's C.R.C.P. 106(a)(4) Claim.

The City contends that the trial court erred in upholding the municipal court's decision here because (a) the trial court applied the wrong standard of review, (b) the manual grants to the City the absolute unfettered discretion to discharge an employee convicted of a felony, and (c) in any event, the evidence presented to the city manager was competent to sustain his decision. We hold that, even if the standard of review advocated by the City is applied, the district court's judgment dismissing its C.R.C.P. 106(a)(4) claim merits affirmance.

### A.

The manual is unique to the extent that it establishes as the last step in the administrative process an appeal to the municipal court. And, it requires that court to review the city manager's decision on essentially the same basis that the district court is required to review an administrative tribunal's decision under C.R.C.P. 106(a)(4).

Given this procedure, the City argues that the review by the municipal court is an intermediate *judicial* review to which the City has subjected its administrative employment decisions and that the municipal court's deci-

sion is not a part of the City's administrative decision-making process. It argues, therefore, that the district court should have reviewed the *city manager's* decision to determine whether that decision was arbitrary and without evidentiary support and not the decision of the municipal judge.

In *Empiregas, Inc. of Pueblo v. County Court*, 713 P.2d 937, 938 (Colo.App.1985), it was held that, when reviewing a district court judgment in C.R.C.P. 106(a)(4) proceedings, the court of appeals "is in the same position as the district court" and should review the administrative tribunal's decision, not the decision of the district court. However, we have reviewed the entire administrative record here, and because we conclude that the municipal court properly determined that that record does not support the city manager's decision, the district court's judgment is entitled to be affirmed whichever standard of review is used.

### B.

■ In its brief, the City appears to argue that, because the manual provides that "the City" reserves the right to discipline an employee for a conviction which, "in its sole judgment," renders an employee "unfit to perform [his or her] job" or "brings disrepute upon" or "compromises the integrity" of the City, the city manager's decision is not subject to judicial review. We disagree.

■ While the exact legislative authorization for the issuance of the manual is not made clear by the record, it is agreed that its issuance was authorized by the municipal code adopted by city council. This being the case, the pertinent provision cannot be interpreted as delegating to the city manager the right to exercise his unfettered discretion without the application of stipulated criteria. There must be adequate criteria established within which such discretion is to be exercised. *Regional Transportation District v. Colorado Department of Labor*, 830 P.2d 942 (Colo.1992); *Cottrell v. City & County of Denver*, 636 P.2d 703 (Colo.1981).

■ The manual here furnishes the three criteria to be used in determining if an employee's conviction renders his or her continued employment inappropriate. Yet, to hold that the city manager's decision as to whether any of these criteria exist is final without the possibility of any review of that decision would result in the same opportunity for unfettered and uncontrolled decision-making as would the absence of any stated criteria. And, we cannot interpret the manual in such a way as to render its provisions invalid. *See Curnow v. Yarbrough*, 676 P.2d 1177 (Colo. 1984).

Further, not only does the manual contain provisions authorizing the municipal court to review the city manager's decision to determine whether that decision has resulted from an abuse of discretion, but it also provides that the municipal court's decision upon the issue "shall be final, subject only to review by the courts of the State of Colorado." Unless the *basis* for the city manager's decision can be examined, therefore, these provisions would be meaningless.

■ We conclude, then, that the manual requires that, in order to justify the termination of a permanent employee's employment, an employee's conviction must render him or her unfit to perform the job or else it must bring the City into disrepute or compromise its integrity. Further, the manual contemplates that the city manager's termination decision is to be reviewed by the municipal court for an abuse of discretion. In conducting such review, the municipal court must consider the information relied upon by the city manager and reverse that decision if the court concludes that it represents an abuse of the manager's discretion.

### C.

■ The City finally contends that there was sufficient competent evidence presented to him to support the city manager's decision. We disagree.

■ The standard for review of an administrative tribunal's judicial or quasi-judicial decision under C.R.C.P. 106(a)(4) is whether there is any competent evidence to support that decision. Under this standard, such a decision must be set aside if it "is so devoid of evidentiary support that it can only

be explained as an arbitrary and capricious exercise of authority." *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo. 1986).

Such must be said of the city manager's decision here.

That decision concluded that defendant's conviction had rendered him unfit to perform his job, had brought disrepute upon the City, and had compromised its integrity. There is, however, no competent evidence in the record to support such a conclusion.

It is undisputed that the employee had compiled an excellent work record, and all parties concede that he can be expected to perform the "technical" aspects of his position in an exemplary fashion in the future. Further, testimony from numerous co-employees and lower level supervisors asserted that his conviction would have no effect upon their relationship with him.

Likewise, there is no evidence that defendant was publicly identified as connected with the City during the course of the criminal proceedings so that his conviction reflected either upon the reputation or the integrity of the City. At the same time, there is undisputed testimony in the record that several other City employees had committed similar sexual offenses, but because they had asked to be placed in treatment programs (similar to that in which defendant was participating) at an early stage of their court proceedings, they had not been convicted. These other employees had not been discharged, and their continued employment with the City had not caused any problems.

Finally, expert testimony was that defendant had been engaged in suitable therapy, which he had commenced before his conviction, and that the odds of any repetition of the offense by him was less than 10%.

In contrast to this substantial evidence, the City presented three witnesses—the department head who initially terminated the employee, the deputy city manager who sustained that termination, and a rebuttal witness presented several days after a continuance of the hearing.

The department head acknowledged that the City had continued in its employ several other persons who had committed incestuous acts, and he gave no instances in which such continued employment had caused any problems. Because defendant had been convicted and placed on probation, rather than diverted to another program, however, this witness considered that it was the conviction that was important and not the effect that the conviction might have had on defendant's job performance. He asserted that "in all probability [he] would [discharge] all felons."

The deputy stated that he upheld defendant's discharge because of the "possibility" that the employee's conviction might disrupt the relationship with other employees. However, neither he nor the department head had discussed the subject with any of defendant's immediate supervisors or with his co-employees.

Finally, the City's rebuttal witness was an employee who was part of defendant's crew. He testified that he had spoken with several other employees and had received negative comments about defendant's conviction from several of them. He conceded, however, that none of these employees worked either for or with defendant. He also testified that he could work with defendant and could also work under him.

The evidence was, therefore, that the department head's decision to discharge was based upon the employee's conviction alone—a standard that is inconsistent both with the manual and with the state's public policy as expressed in § 24–5–101, C.R.S. (1993 Cum. Supp.) (conviction of felony does not, in and of itself, disqualify a person from "public employment"). And, the deputy's testimony was based upon only a speculative "possibility" that was in direct conflict with the specific testimony of the other witnesses and which admittedly did not consider defendant's particular circumstances. Finally, the City's rebuttal witness' testimony was based on hearsay, did not describe the negative comments that he referred to, and did not explain how such negative impressions would impact upon defendant's fitness for his job.

Given the evidence before him, therefore, the city manager's decision can be classified only as without evidentiary support as the

municipal court found. Hence, the district court's judgment dismissing the City's claim was properly entered.

## II. *The Substantive Due Process Claim.*

The trial court, concluding that defendant had failed to identify any action by the City that could be classified as a substantive due process violation, granted the City's motion for summary judgment and dismissed defendant's § 1983 claim. In addition, both in the trial court and before us, the City has argued that the tenets of substantive due process are not applicable to protect the type of property interest represented by a public employee's right to continued employment. We disagree.

We conclude, rather, that the property interest represented by a public employee's right to continued employment is protected by the substantive due process concepts inhering within the Fourteenth Amendment. In addition, while we do not agree with defendant that the municipal court's finding that the city manager's decision was "arbitrary" is dispositive of his claimed substantive due process violation, we do agree that the facts disclosed by this record prohibit the entry of a summary judgment dismissing his § 1983 claim.

### A.

The Fourteenth Amendment's due process guaranties extend to state-created property rights. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, not every contract between a public entity and an individual gives rise to a property right that is protected by such due process considerations. It is, therefore, not every breach of a public contract by a local government that results in a deprivation of property for Fourteenth Amendment purposes. *See Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir.1991) (termination of public hospital's residency program not deprivation of property); *San Bernardino Physicians' Services Medical Group, Inc., v. San Bernardino,* 825 F.2d 1404 (9th Cir. 1987) (contract to supply medical services to county did not create protected property interest). *See generally* M.A. Schwartz & J.E. Kirkin, *Section 1983 Litigation: Claims, Defenses, & Fees* § 3.14 (1991).

However, a public employee's contract of employment that grants such employee the legal right to continued employment is a property interest that is protected by the Fourteenth Amendment's procedural due process requirements. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Montoya v. Colorado Springs,* 770 P.2d 1358 (Colo.App.1989). *Cf. University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976).

Nevertheless, the United States Supreme Court has not yet specifically addressed the question whether the property interest created by such a contract is protected by *substantive* due process considerations. Such considerations would prohibit termination of a public employee who has a right to continued employment, if the termination were based on arbitrary grounds having no relationship to employment requirements or conditions.

In *Harrah Independent School District v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979), however, a unanimous Supreme Court passed upon the merits of a claim by a tenured teacher that her discharge violated her substantive due process rights because the reasons for the discharge were so "arbitrary" as to offend "notions of fairness." Concluding that such a claim could succeed only if there were "no rational connection between the [School] Board action and the School District's conceded interest in providing its students with competent, well-trained teachers," the court determined that the teacher's claim of a substantive due process violation did not "square with the facts." 440 U.S. at 198–199, 99 S.Ct. at 1064, 59 L.Ed.2d at 254. Nothing within the *Harrah* opinion suggests that the property interest possessed by a tenured teacher is not an interest protected by the substantive requirements of the Fourteenth Amendment's due process clause.

Further, while the federal courts of appeal are not unanimous in their view of the issue, the majority of the circuits have either di-

rectly held that a continued right to public employment represents a property right protected by the requirements of substantive due process or have passed upon the merits of such a claim without addressing the point. *See, e.g., Morris v. Clifford,* 903 F.2d 574 (8th Cir.1990); *Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987); *Moore v. Warwick Public School District,* 794 F.2d 322 (8th Cir.1986); *Garguil v. Tompkins,* 704 F.2d 661 (2d Cir.1982); *Brenna v. Southern Colorado State College,* 589 F.2d 475 (10th Cir. 1978). For a collection and discussion of the various circuit court opinions, *see Lum v. Jensen,* 876 F.2d 1385 (9th Cir.1989).

The Sixth Circuit has reached a contrary conclusion. *Sutton v. Cleveland Board of Education,* 958 F.2d 1339 (6th Cir.1992).

In asking us to adopt the *Sutton* court's analysis, the City relies, as did that court, upon Justice Powell's special concurrence in *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). In our view, however, that concurrence does not assert that a public employee who has a legal right to continued employment is not protected by substantive due process considerations. On the contrary, our reading of Justice Powell's opinion leads us to conclude that he supports the extension of that protection to such a property interest.

*Ewing* presented a unique state-created property interest—the right of a medical student not to be expelled from his course of instruction without good cause. The *Ewing* majority, nevertheless, assumed that substantive due process considerations would extend to that unique interest, but concluded, as in *Harrah,* that the state had not acted arbitrarily in removing Ewing from the medical school.

In his special concurrence, Justice Powell argued that the right to continued enrollment in medical school, although constituting a legal right created by the state, was not the sort of interest that had "heretofore been accorded the protection of substantive due process. *Cf. Harrah Independent School District v. Martin,* [supra]." *Regents of University of Michigan v. Ewing, supra,* 474 U.S. at 230, 106 S.Ct. at 248, 88 L.Ed.2d at 535.

This reference to *Harrah,* in which Justice Powell had concurred, suggests that he was drawing a distinction between the unusual property right presented in *Ewing* from the far more important right of a public employee to earn a livelihood that was reviewed in *Harrah.* And, this type of distinction is one that has been drawn by other courts. *See, e.g., S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988) (an ordinary commercial contract with a public entity is "qualitatively different" from the type of public employment contracts that create property interests protected by the Fourteenth Amendment).

■ While we concede that not every contract right recognized as "property" for some purpose of state law is protected by either procedural or substantive due process concepts, the right of a public employee to continued employment is a property interest that is clearly protected by the requirements of procedural due process. And, thus far, neither the Supreme Court nor the majority of the federal courts of appeal have refused to extend the protections of substantive due process to that property interest. We hold, therefore, that a public employee who has a vested right to continue in his or her employment may not be deprived of that employment for reasons that have no rational connection with the employment requirements or goals and that are so arbitrary as to offend notions of fairness. The Fourteenth Amendment's requirements of substantive due process protect such an employee from such an action.

### B.

■ Defendant also asserts that the municipal court's determination that the city manager acted arbitrarily in upholding defendant's discharge, once such determination was approved by the trial court, was dispositive of his claim that the City was guilty of arbitrary action under substantive due process concepts. We disagree.

It is to be noted that defendant did not seek to join as additional counterclaim defendants either the city manager or any other supervisor who participated in the decision to

discharge him. Hence, the liability of none of these individuals is at issue in this case; defendant's substantive due process counterclaim sought to impose liability only upon the City, as an entity.

Under 42 U.S.C. § 1983, the City is not liable for the acts of any of its employees by application of the doctrine of respondeat superior. Rather, an entity's liability for the unconstitutional acts of its subordinates must be grounded upon the proposition that such acts were undertaken pursuant to a "policy" of the entity. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Such a policy may be evidenced either by an express ordinance or other enactment adopted by its policy makers or by a widespread practice so permanent and well settled as to constitute a "custom or usage" having the force of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Further, even in the absence of an express policy or a persistent practice, a single decision by one of the entity's policy makers in a particular instance may represent the establishment of a "policy" for that specific circumstance, so as to render the entity liable for that decision. *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In this latter instance, however, the decision must be one that is final; if it is subject to further review, it is the action taken upon that review and not the initial decision which represents the official policy of the entity. *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Here, the manual is what expresses the City's policy. And, the manual expressly recognizes that no employee should be dismissed from governmental employment based solely upon that employee's conviction of a felony. Rather, to warrant dismissal, the City's official policy requires that the conviction have some deleterious effect upon the employment relationship.

To assure compliance with this policy, the City has established a procedure for the review of any decision to discharge an employee. That procedure culminates in a review by a judicial officer who, nevertheless, is charged with enforcing the City policy and, in this sense, is a "policy maker." Indeed, even defendant concedes that, for purposes of this review, the municipal judge should be looked upon as a municipal administrator.

In this context, therefore, it is the decision of the municipal court that is the "final" policy decision; it is that court's decision that represents action by the City, not the earlier, intermediate decision made by the city manager. *See St. Louis v. Praprotnik, supra* (where local civil service commission reversed employment decision respecting plaintiff, city not liable for earlier decision). *See also Archuleta v. Colorado Department of Institutions,* 936 F.2d 483 (10th Cir.1991) (even if claim is asserted against individuals who made initial decision, if internal appeal process grants to employee substantially all relief to which employee is entitled, courts will refuse to recognize substantive due process claim).

Hence, because the city manager was not the "final policy maker" with respect to defendant's dismissal, the City is not liable for that decision. Consequently, the municipal court's determination that the city manager was arbitrary cannot be dispositive of the City's liability.

Indeed, were defendant relying solely upon the city manager's decision to support his claim of a denial of substantive due process, we would agree with the trial court that such claim must be dismissed. That is not the sole basis upon which such claim is grounded, however.

After dismissal of the City's complaint, defendant filed a requested pleading amendment in which he asserted that, while the City's manual provided that the municipal court's decision was to be final, subject only to judicial review, and while the municipal court determined that no basis had been presented for defendant's discharge, the City had refused to honor that final decision. Specifically, although C.R.C.P. 106(a)(4)(V) provides a method whereby a "decision" of a lower tribunal may be "stayed" (which requires the type of proof necessary for the

entry of a preliminary injunction under C.R.C.P. 65), the City had neither applied for a stay of the municipal court's decision pursuant to C.R.C.P. 106(a)(4)(V) nor placed defendant back on the job.

Likewise, during oral argument before this court, counsel for the City conceded that, even after entry of the district court's judgment, defendant was not restored to his employment. Yet, the City made no application either to the district court, see C.R.C.P. 62, or to this court, see C.A.R. 8, to stay the legal effect of the district court's declaration.

These actions were undertaken *after* the decision was rendered by the municipal court that defendant's conviction did not constitute proper cause for his termination, and we presume that such actions were authorized by those city officials responsible for such decisions. *See Pembaur v. Cincinnati, supra.* We cannot say that such actions were not arbitrary and capricious for Fourteenth Amendment purposes. *Cf. Archuleta v. Colorado Department of Institutions, supra.* Whether such actions constituted constitutional deprivations, however, may depend upon the City's reasons for not restoring defendant to his job and for not seeking judicial approval for such refusal.

Hence, because the determination of this issue will rest upon factual considerations, we conclude that the grant of summary judgment upon this counterclaim was not justified.

### III. *The Breach of Contract Claim.*

█ Defendant also asserts that the trial court abused its discretion in refusing to allow him to amend his pleadings to allege that the City had willfully violated its contract of employment with him. Given the particular circumstances of this case and the basis for the trial court's decision in this respect, we agree.

The trial court refused to allow this pleading to be filed solely because of its view that such claim was not related to the C.R.C.P. 106(a)(4) claim asserted by the City in its complaint. We disagree with this analysis.

█ There is no requirement that a counterclaim must arise out of the same

transaction or occurrence that a complaint is based upon or that it otherwise be related to any claim asserted in the complaint. *See* C.R.C.P. 13(b) (authorizing "permissive" counterclaims). However, a district court apparently possesses some discretion as to whether such claims will be accepted. *See Bohlender v. Oster,* 165 Colo. 164, 439 P.2d 999 (1968).

█ On the other hand, some counterclaims are "compulsory" and must be asserted or the right to assert them will be lost. *See* C.R.C.P. 13(a); C.R.C.P. 106(a)(4)(II) and (VI). These are claims which, while perhaps not relying upon the same evidence as that relied upon by the other party, arise out of the same transaction or occurrence and are "logically related" to the other party's claim. *Visual Factor, Inc. v. Sinclair,* 166 Colo. 22, 441 P.2d 643 (1968); *McCabe v. United Bank of Boulder,* 657 P.2d 976 (Colo. App.1982).

Applying this test to defendant's proffered counterclaim asserting a contract breach, we conclude that such claim was a compulsory counterclaim which the trial court could not refuse to entertain, although C.R.C.P. 106(a)(4)(VI) authorizes the court to treat it separately from the City's claim.

█ The relationship between the City and the defendant, as is the case with every employment relationship, is a contractual one. And, that contractual relationship is governed, in part, by the personnel policies set forth in the manual. Hence, the violation of such policies by the City can be the basis for the assertion of a breach of contract claim. *See Adams County School District v. Dickey,* 791 P.2d 688 (Colo.1990); *Ness v. Glasscock,* 781 P.2d 137 (Colo.App.1989).

Here, the action that was the subject of the municipal court's decision, which the City sought to have reviewed, was the same action relied upon by defendant in asserting a contract breach. Therefore, the contract claim asserted by him clearly arose out of the same transaction or occurrence and bore a logical relationship to the City's claim. Hence, it was a compulsory counterclaim, and the trial court erred in refusing to consider it. *See Powers v. Board of County Commissioners,*

**38**

651 P.2d 463 (Colo.App.1982) (because plaintiff must join all other related claims in pressing C.R.C.P. 106(a)(4) claim, court erred in refusing to allow complaint to be amended to allege declaratory judgment claim).

We note that defendant alleged that the breach of contract that the City committed by terminating him and by refusing to reinstate him constituted a willful violation. If such a claim lies against the City, it would allow defendant to be compensated for the emotional suffering or other consequential damages, if any, that he sustained as a result of the City's breach. *See Trimble v. City and County of Denver,* 697 P.2d 716 (Colo. 1985); *CJI–Civ.3d* 30:48 (1990).

The district court's judgment approving the municipal court's decision and our affirmance of that judgment is dispositive of the question of the City's violation of the manual and of the City's contract breach based upon such violation.

However, because the district court refused to allow defendant to file this counterclaim, the parties have not addressed, and nothing in this opinion should be read as considering or expressing a view upon, the question whether a public employee whose employment contract provides for an administrative appeal of any discharge may assert a claim against the public employer for *willful* contract breach based upon that discharge. *See Archuleta v. Colorado Department of Institutions, supra.* This is an issue to be addressed by the district court upon remand. Further, if that court concludes that such a claim will lie, it will also be necessary to determine whether plaintiff's evidence here supports such a claim.

As a general rule, if a public employee is discharged in violation of his or her employment contract, he or she is entitled to legal and equitable relief to compensate him or her for any damages suffered as a result, irrespective of whether such violation was willful. Such relief may include an order of reinstatement and an award of compensatory damages, based on the employee's lost wages and fringe benefits. *See Lanes·v. O'Brien,* 746 P.2d 1366 (Colo.App.1987). The extent to which, if at all, that defendant has suffered damages here and the nature of the

equitable relief, if any, that would be appropriate to grant to him are also questions to be addressed by the district court on remand.

The judgment of the trial court dismissing the City's C.R.C.P. 106(a)(4) claim is affirmed. The judgment dismissing defendant's § 1983 claim and its order refusing to entertain his breach of contract claim are reversed, and the cause is remanded to that court for further proceedings consistent with the views expressed in this opinion.

PLANK and RULAND, JJ., concur.