**Patricia FAIR, Plaintiff–Appellee,**

**v.**

**RED LION INN, Operating as L.P., Defendant–Appellant.**

**No. 94CA0810.**

Colorado Court of Appeals,
Div. II.

Oct. 12, 1995.

Rehearing Denied Nov. 9, 1995.

Certiorari Granted Aug. 19, 1996.

Cross–Petition for Certiorari Denied
(Red Lion Inn) Aug. 19, 1996.

Cleveland & Cross, P.C., Keith Cross, Colorado Springs, for Plaintiff–Appellee.

Holland and Hart, John M. Husband, Elaine H. Turner, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Red Lion Inn, appeals the judgment entered upon a jury verdict in favor of plaintiff, Patricia Fair, on her claim for breach of implied employment contract. On appeal, Red Lion contends that the evidence is insufficient to support a verdict for Fair on her claim for breach of implied contract, that the trial court erred in failing to direct a verdict in its favor, and that Fair has failed to mitigate her damages as a matter of law because she refused to accept an unconditional offer of reemployment. We conclude that the evidence was sufficient to support the jury's finding of liability, but determine

that Fair is limited to recovery of damages incurred before Red Lion's unconditional offer of reinstatement was made. Consequently, we affirm the liability finding, but reverse and remand for a new trial on damages.

Fair was hired by Red Lion in June of 1987. Before being hired, Fair completed and signed an employment application which, immediately above the signature line, stated:

I understand that employment with Red Lion Inns is voluntary, and at-will, and that I am free to resign my position at any time. I also understand that Red Lion Inn has the right to discharge any employee for any reason, at any time, with or without cause. I have read and understand the foregoing statements and accept the same as conditions of employment.

At the time she was hired, Fair was given an employee manual, which she read. The manual set forth the policies of Red Lion with regard to a variety of employment matters, including leaves of absence, medical leave, and termination of employment. The manual and an employment agreement, which Fair also signed, contained additional specific "at-will" clauses.

On the first page of the employee manual was the following disclaimer language:

The policies, practices, and procedures set forth in this Employees' Manual are guidelines for supervision. They are not intended to confer contractual rights of any kind upon any employee or to create contractual obligations of any kind for the Company. The Company may revise, delete or supplement any policy, practice or procedure in this Employees' Manual at any time in its sole discretion.

Also according to the manual, after completion of ninety days service with Red Lion, a medical leave of absence could be granted without pay to a qualified individual for up to three months. During the employee's medical leave of absence, Red Lion would continue to pay the employer cost for group insurance benefits.

Concerning a medical leave of absence, the manual stated:

During a medical leave of absence, every effort will be made to keep a position available for the employee's return. If it is not possible to keep the position open because of business necessity, preference will be given for a similar position of equal to or lesser pay. Preference will be based upon job openings and qualifications.

. . . .

Failure to advise the company of availability to return to work, failure to return to work upon doctor's release or continued absence from work beyond the time approved by the company will be deemed a voluntary termination of employment with Red Lion Inns.

A medical leave of absence form must be completed and kept with the employee's personnel records.

Fair continued her employment with Red Lion for approximately three years, at which time she was injured in an automobile accident. She found working with her injuries difficult and applied for a medical leave of absence as set forth in the employee manual.

Red Lion granted Fair a medical leave of absence, and Fair and representatives of Red Lion signed a document entitled "Medical Leave of Absence." This form reprinted, verbatim, the information concerning medical leaves contained in the manual and then noted that her medical leave had been approved for the period between May 25, 1990, and June 20, 1990. The form further stated that a failure by Fair to provide by June 20, 1990, either a doctor's release to work or a statement of disability "will result in removal from the payroll records."

On June 20, Fair requested that she be allowed to bring her doctor's release in on June 22 and was told by her supervisor and an individual in the personnel department that there would be "no problem" with doing so. After submitting a release, she was told that it was not acceptable because it was not a full release. She then asked if she could submit the full release by June 29, the next Friday, and was again told that this would be acceptable. When she later did so, the release specified she could return to work without restrictions on Monday, July 2, 1990. Because Fair could not be returned to the

active work schedule until July 2 in any event, her supervisor again consented to this extension.

The following week Fair contacted Red Lion to determine her work schedule and was informed that she had been terminated. Red Lion later informed her that the reason for her termination was that it could not hold open her position. Red Lion issued a back dated termination notice stating that she was not given a full release by her doctor until July 2, 1990, and that it was unable to hold her position open past the expiration date of June 20, 1990.

After Fair retained counsel, Red Lion made an initial offer of reinstatement to her which, however, did not discuss how any fringe benefits would be treated nor whether she would return as a new employee. Fair's attorney replied with a counteroffer, which, in addition to requesting reimbursement for all monetary damages, specified that she would return to employment if four special conditions were met: (1) Fair would be given a position at the front desk with specific days and hours; (2) all employee benefits would be restored without penalty for interruption; (3) restrictions would be placed on Red Lion's right to terminate Fair; and (4) Fair would be given an opportunity to transfer to another Red Lion facility.

Red Lion declined the counteroffer. Thereafter, on October 9, 1990, Red Lion sent a final offer to Fair, in which it proposed reinstatement to her previous position, restoration of appropriate benefits with coverage "bridged," maintenance of her seniority, and indicated that Fair would have rights to transfer based on company policy just as any other employee would have. It declined to restrict its asserted right to terminate Fair.

Fair declined the offer for three reasons: (1) she was concerned about the language "appropriate benefits," because she had become pregnant, had contacted the medical insurance carrier for Red Lion, and had been told that the carrier was the entity that made decisions concerning insurance coverage; (2) she feared she would be terminated in retaliation; and (3) she was concerned about her ability to meet the physical requirements of her job because of her pregnancy.

Thereafter, Fair initiated this action, alleging that Red Lion had breached an implied contract not to discharge her if she complied with the terms of Red Lion's medical leave policy. In defense, Red Lion argued that it had no contractual obligation to continue Fair's employment and that Fair had failed to mitigate her damages by accepting the offer of reinstatement.

At trial, Red Lion moved for a directed verdict on Fair's claim, contending that there was insufficient evidence to submit the claim to the jury. Alternatively, Red Lion moved for a directed verdict on Fair's damage claim, essentially renewing its motion *in limine* to limit damages to those incurred before the final offer of reinstatement was made. The trial court denied both requests and the jury returned a verdict for Fair. Red Lion's motion for judgment notwithstanding the verdict was denied and this appeal followed.

I.

Red Lion asserts that there is insufficient evidence to support a verdict for Fair concerning the existence of an implied contract. In connection with that assertion, it contends that the trial court erred in failing to grant its motion for directed verdict. We disagree.

■ In evaluating a motion for directed verdict, we must determine whether there is any evidence of sufficient probative force to support the verdict. We do so by indulging every reasonable inference that can be legitimately drawn in the prevailing party's favor and by considering whether the evidence, when viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the jury's verdict. *Evans v. Webster*, 832 P.2d 951 (Colo.App.1991).

■ A verdict should be directed only in the clearest of cases when the evidence is undisputed and it is plain no reasonable person could decide the issue against the moving party. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967).

■ When sufficiency of the evidence is challenged on appeal, we likewise must determine whether the evidence, viewed as a

whole, and in the light most favorable to the prevailing party, is sufficient to support the jury's verdict. *Frontier Exploration, Inc. v. American National Fire Insurance Co.,* 849 P.2d 887 (Colo.App.1992).

■ It is the right of the jury, not the province of this court, to determine the weight of the evidence and the credibility of witnesses and to draw all reasonable inferences of fact from the evidence. *National Canada Corp. v. Dikeou,* 868 P.2d 1131 (Colo. App.1993).

■ When parties manifest their agreement by either written or oral words, the contract is generally said to be express. When the agreement is manifested by conduct, it is said to be a contract implied-in-fact. *Colo–Tex Leasing, Inc. v. Neitzert,* 746 P.2d 972 (Colo.App.1987).

■ Implied-in-fact contracts arise from conduct of the parties which evidences a mutual intention to contract with each other. *A.R.A. Manufacturing Co. v. Cohen,* 654 P.2d 857 (Colo.App.1982). There is no difference in legal effect between express and implied-in-fact contracts. *Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825 (Colo.App. 1990).

■ When the existence of a contract is in issue and the evidence is in conflict or admits of more than one inference or conclusion, then it is for the trier of fact to decide whether a contract exists. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986). Whether the parties have modified or amended a previously existing contract is likewise a question of fact. *See Western Air Lines, Inc. v. Hollenbeck,* 124 Colo. 130, 235 P.2d 792 (1951); *CJI–Civ.3d* 30:9 (1988).

■ Thus, a contract for employment terminable at the will of either party may be supplanted by new terms of employment accepted by acquiescence. *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo.App. 1986). And, procedures contained in employee manuals may modify or change otherwise at-will employment arrangements. *Ness v. Glasscock,* 781 P.2d 137 (Colo.App.1989).

■ An employee may prove that an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause) or that an employer's policy statement restricting such right has been properly accepted as a modification of that contract. *See Schur v. Storage Technology Corp.,* 878 P.2d 51 (Colo.App.1994); *DeRubis v. Broadmoor Hotel,* 772 P.2d 681 (Colo.App. 1989). Thus, statements made in an employee handbook limiting an employer's right to terminate an employee may form the basis for a breach of implied contract claim. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987); *Evenson v. Colorado Farm Bureau Mutual Insurance Co.,* 879 P.2d 402 (Colo.App.1993).

■ To establish that representations in an employment manual resulted in a contract, the employee must prove that the employer's actions manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook. *Continental Air Lines, Inc. v. Keenan, supra.*

■ A clear and conspicuous disclaimer which specifies that terms in an employee manual are not intended to create contractual obligations may preclude an implied contract based on those terms as a matter of law. *See Ferrera v. Nielsen,* 799 P.2d 458 (Colo.App.1990). However, because parties can modify a contract by words or by conduct, such disclaimer language is not determinative when there is other legally sufficient evidence in the record to create a question of fact concerning modification. Under such circumstances, a directed verdict or summary judgment is inappropriate. *See Evenson v. Colorado Farm Bureau Mutual Insurance Co., supra.*

In *Evenson, supra,* a division of this court found that the policy manual contained a disclaimer opposite the signature page which notified employees that the language in the handbook did not create contractual obligations between the employer and its employees. However, the manual also contained certain specific termination procedures. Testimony of managers and executives of the employer established that they regarded the termination procedures as

mandatory and that they were in fact treated as binding. Under the circumstances of that case, the court determined that there was a factual dispute as to whether the disciplinary procedures were contractually binding.

Here, the initial employment agreement was an express contract which provided for at-will employment. Further, the employee's manual indicated that no provisions of the manual were intended to create binding contractual obligations; the directives and policies described in the manual were merely to be used as "guidelines for supervision." Hence, the failure of a supervisor to grant a medical leave of absence to Fair in the manner described in the manual could not provide the basis for a claim of breach of contract. The express and specific provisions of the manual would prohibit such a claim.

This is not to say, however, that a supervisor who agrees to grant a medical leave of absence to an employee cannot thereby create an enforceable obligation on behalf of the employer. On the contrary, if the employee is specifically promised reemployment at the end of a specified period, nothing within the manual would prohibit the judicial enforcement of that special promise.

Here, the parties' execution of the written medical leave of absence form, combined with the assurances given by the Human Resources director and Fair's supervisor that the presentation of a full medical release by a specified date would be acceptable, could be determined by a reasonable fact finder to be a modification of Fair's at-will status, constituting an obligation of Red Lion to "make every effort ... to keep a position available ..." and, "if it is not possible to keep the position open because of business necessity," to give Fair preference for a similar position at equal or lesser pay. Such words and actions by the employer could manifest to a reasonable person an offer to be bound by the special promises contained in the medical leave of absence form and in the supervisor's oral assurances despite any disclaimer in the manual. Likewise, such a fact finder could also determine that Fair's actions constituted

an acceptance of that offer. *See Continental Air Lines, Inc. v. Keenan, supra.*

Thus, an express or implied modification of the original express agreement by words or conduct could be determined to have occurred under the circumstances present here. And, contrary to Red Lion's contention, the evidence as to this issue is not too vague or indefinite to warrant submission to the jury. *See Mariani v. Rocky Mountain Hospital, Medical Service,* 902 P.2d 429 (Colo.App.1994, *cert. granted,* August 28, 1995); *Tuttle v. ANR Freight System, Inc., supra.*

This result is not inconsistent with *Ferrera v. Nielsen, supra.* There, the handbook contained no promise upon which plaintiff could base an implied contract claim, nor was a separate agreement involved. In addition, the handbook did not contain any provisions purporting to modify the at-will employment. Here, in contrast, the medical leave of absence form contains specific promises that would be effective during a medical leave of absence and the evidence indicates the supervisors agreement to be bound. Moreover, Fair's actions and testimony indicate reliance upon those provisions. *See also Allabashi v. Lincoln National Sales Corp.,* 824 P.2d 1 (Colo.App.1991) (disclaimer not determinative where other evidence contradicted its terms); *cf. Schur v. Storage Technology Corp., supra* (even if disclaimer not effective and handbook provisions binding upon employer, handbook terms created no substantive rights in plaintiff).

On the evidence presented, we conclude that a factual dispute was present. Hence, the trial court properly declined to grant a directed verdict because the evidence was sufficient to support the jury's finding of liability; consequently, we may not disturb that finding on appeal.

## II.

Red Lion next asserts that the trial court erred in failing to limit the damage award to those damages incurred prior to the time it offered to reinstate Fair. In essence, Red Lion asks us to hold, as a matter of law, that Fair has failed to mitigate her damages by

rejecting Red Lion's offer. Based upon our review of the record, and the reasons proffered by Fair, we conclude that the trial court should have so limited the award. Hence, a new trial on damages is required.

■■■ A party injured by a breach of employment contract has a duty to take reasonable efforts to mitigate the damages sustained. *Technical Computer Services, Inc. v. Buckley,* 844 P.2d 1249 (Colo.App.1992). *See also Hoehne Ditch Co. v. John Flood Ditch Co.,* 76 Colo. 500, 233 P. 167 (1925); *CJI–Civ.3d* 5:2 (1988).

■■■ Depending upon the substance of the offer and the circumstances under which it is made, an employee may be required to accept an offer of reemployment from the original employer as part of his or her duty to mitigate damages. A claimant may forfeit all or part of claimed rights to back pay if he or she refuses a job offered by the previous employer that is substantially equivalent to the one from which he or she was wrongfully terminated, *see Ford Motor Co. v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), so long as acceptance of the reemployment offer would not effect an abandonment of the employee's rights under the original contract. *See* Annot., 44 A.L.R.3d 629 (1972). Accordingly, absent special circumstances, the ongoing accrual of liability ends when a claimant rejects an unconditional offer of reemployment to a position of like nature or its substantial equivalent. *See Giandonato v. Sybron Corp.,* 804 F.2d 120 (10th Cir.1986).

■■■ "Special circumstances" include valid reasons for refusal. *Giandonato v. Sybron Corp., supra.* Hence, an employee is not required to accept reinstatement if doing so would be offensive or degrading. *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701 (Minn.1992). Likewise, an employee is not required to accept an offer of reemployment if to do so would constitute a disadvantageous renegotiation of his or her original contract or an abandonment of rights and remedies thereunder. *Schwarze v. Solo Cup Co.,* 112 Ill.App.3d 632, 68 Ill.Dec. 228, 445 N.E.2d 872 (1983). Thus, the trial court must consider all of the circumstances under which the reemployment offer was made and rejected, including the terms of the offer and the reasons for refusal. *Taylor v. Teletype Corp.,* 648 F.2d 1129 (8th Cir.1981).

■■■ The burden of proving that losses could have been avoided must be borne by the party who has broken the contract. *See Hedgecock v. Stewart Title Co.,* 676 P.2d 1208 (Colo.App.1983). However, once the employer demonstrates that an unconditional offer of reemployment was made, the burden of going forward shifts to the employee to demonstrate valid reasons for a refusal to accept the offer. *See Giandonato v. Sybron Corp., supra.*

■■■ Whether an employee has shown special circumstances which justify a refusal of an unconditional offer to return to employment is generally a question for the trier of fact. *See* Restatement (Second) Agency § 455 comment d (1958); 5 A. Corbin, *Contracts* § 1044 (1964). However, when a court, upon consideration of all relevant circumstances, concludes that the proffered reasons for rejecting reemployment are insufficient as a matter of law, it should direct a verdict for the employer on the issue of damages. *See Giandonato v. Sybron Corp., supra.*

Red Lion relies on *Giandonato* to support its argument that Fair's reasons for rejecting reinstatement were insufficient under the special circumstances test as a matter of law. In that case, the court held that a claimant who alleged he was terminated in violation of the federal Age Discrimination in Employment Act was precluded from obtaining recovery upon any claim for back pay because of his refusal to accept reinstatement. The claimant had turned down an unconditional offer because his wife was ill, because he did not want to work under the same supervisor, and because the offer contained "too many uncertainties." In finding these reasons insufficient as a matter of law, the court noted, *inter alia,* that the employer had offered to hire another supervisor and that the claimant had made no effort to clarify the offer.

■■■ Here, the circumstances of the final offer of reemployment and Fair's refusal thereof, as described above, lead us to con-

clude that the reasons for refusal are, as a matter of law, insufficient.

First, if Fair had an implied employment contract that protected her from discharge during her medical leave of absence by which Red Lion promised to make "every effort" to retain her position, as the jury found, those contractual promises could have lasted, at the latest, only until she was reinstated; they would have been fulfilled at that time. If and when the medical leave was successfully completed, she would have returned to her at-will status.

Thus, when she received the final offer of reinstatement, she had no legitimate expectations for any continued employment beyond the date of her reinstatement, except at the will of Red Lion. Consequently, Red Lion's offer of reinstatement which declined to modify Fair's at-will status after a return to work was consistent with her previous employment position.

Further, Red Lion did not ask Fair to agree to any modification of her rights in order to return to work. And, Fair's concerns about the "sincerity" of an offer are insufficient special circumstances. *See Giandonato v. Sybron Corp., supra.*

Fair's concerns about her ability physically to perform the duties of her position because of her pregnancy are likewise insufficient. The pregnancy was not a condition caused by or imposed by Red Lion. Further, Fair did not express any concerns about her physical condition to Red Lion, nor did she inquire whether modifications could and would be made to accommodate her condition. Moreover, she testified that she had no physical restrictions at the time of the reinstatement offer and did not believe that performing any job function would be a problem.

As to her concern about Red Lion's ability to provide "bridging" of benefits, Red Lion specifically stated that the reinstatement offer included "restoration of the appropriate benefits with coverage bridged as Ms. Fair would maintain her original hire date." While Fair claims she did not understand what "appropriate benefits" meant, she nevertheless did not request clarification of that term.

Moreover, even if Red Lion's medical insurance carrier had declined to continue insurance coverage, Red Lion's offer was not contingent; it would have been bound to provide the benefits even if it had to pay for them itself. Furthermore, Fair testified that she assumed Red Lion had the right to bridge benefits as long as it paid any premiums or other charges that might be imposed by the insurance company.

We thus conclude that the grounds for refusal Fair has presented do not, as a matter of law, constitute sufficient special circumstances which would allow presentation of the mitigation issue to the jury. Accordingly, the trial court erred in refusing to limit any damages award.

That part of the judgment finding Red Lion liable for breach of implied contract is affirmed. That part of the judgment awarding damages is reversed, and the cause is remanded for a new trial on damages only, consistent with the views expressed in this opinion.

CRISWELL and TURSI *, JJ., concur.